12 CIV 5430

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

THE NEW YORK TIMES COMPANY, CITY &
SUBURBAN DELIVERY SYSTEMS, INC., CITY
AND SUBURBAN DELIVERY SYSTEMS, INC.
JANUARY 2009 SEVERANCE PAY PLAN FOR
ELIGIBLE EMPLOYEES REPRESENTED BY
THE NEWSPAPER AND MAIL DELIVERERS'
UNION OF NEW YORK AND VICINITY, PLAN
ADMINISTRATOR OF THE CITY AND SUBURBAN
DELIVERY SYSTEMS, INC. JANUARY 2009
SEVERANCE PAY PLAN FOR ELIGIBLE
EMPLOYEES REPRESENTED BY THE
NEWSPAPER AND MAIL DELIVERERS' UNION
OF NEW YORK AND VICINITY, and ERISA
MANAGEMENT COMMITTEE OF THE NEW YORK
TIMES COMPANY,

                    Plaintiffs,

    -against-

NEWSPAPER AND MAIL DELIVERERS' UNION
OF NEW YORK AND VICINITY, ENRIQUE
GRADOS, DJEVALIN GOJANI, CHRISTOPHER
FABIANI, RICHARD ATKINS, RAIMON MORAN,
JOHN CASSARO, MUNIR FAHREDDINE, and
WILLIE MILES,

                    Defendants.

-------------------------------------------------------------------x

Civil Action No.

**COMPLAINT**

Plaintiffs, The New York Times Company, City & Suburban Delivery Systems, Inc., City and Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan for Eligible Employees Represented by The Newspaper and Mail Deliverers' Union of New York and Vicinity, Plan Administrator of the City and Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan for Eligible Employees Represented By The Newspaper And Mail Deliverers' Union Of New York and Vicinity, and ERISA Management Committee of the New York Times Company, by their undersigned counsel, as and for their Complaint, allege as follows:

84172427.7

## INTRODUCTION

1. This is an interpleader action, pursuant to 28 U.S.C. § 2361, arising from competing claims of eligibility pursuant to the Buyout Provision under the City and Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan for Eligible Employees Represented by Newspaper and Mail Deliverers' Union Of New York and Vicinity ("the Plan"). To ensure that Plaintiffs comply with their fiduciary duty to protect the interests of all participants and beneficiaries in the Plan, Plaintiffs bring this action so that they may deposit with the Court the balance of the funds to be disbursed under the Plan once all the competing claims have been resolved.

## PARTIES

2. Plaintiff, The New York Times Company ("The Times"), is a New York corporation with its principal place of business in New York. The Times is primarily involved in publication of The New York Times, a daily newspaper.

3. Plaintiff, City & Suburban Delivery Systems, Inc. ("C&S"), was a wholly owned subsidiary of The Times prior to its closing effective January 4, 2009. It operated several facilities in the States of New York and New Jersey and was engaged in the wholesale distribution of The New York Times and other publications.

4. Plaintiff, City and Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan for Eligible Employees Represented By The Newspaper And Mail Deliverers' Union Of New York and Vicinity ("the Plan"), is an employee welfare benefit plan under Section 3(1) of the Employees Retirement Income Security Act of 1974, as amended ("ERISA").

5. Plaintiff, Plan Administrator of the City and Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan for Eligible Employees Represented By The Newspaper And

Mail Deliverers' Union Of New York and Vicinity ("Plan Administrator"), currently the Director, Corporate Benefit of The New York Times Company, is a fiduciary with respect to the Plan within the meaning of Section 3 (21)(A) of ERISA and is responsible for the administration of the Plan including resolving claims for benefits under the Plan.

6. Plaintiff, ERISA Management Committee of The New York Times Company ("the Committee"), is responsible for resolving appeals for benefits under the Plan and is a fiduciary with respect to the Plan within the meaning of the Section 3 (21)(A) of ERISA.

7. Defendant, Newspaper and Mail Deliverers' Union of New York and Vicinity ("the NMDU"), at all relevant times, has been a labor organization within the meaning of Section 2(5) of the National Labor Relations Act ("NLRB"). At all relevant times, the NMDU has been the designated collective bargaining representative of C&S, drivers and other employees.

8. Defendant, Enrique Grados ("Grados"), was at all relevant times employed by C&S and represented by the NMDU.

9. Defendant, Djevalin Gojani ("Gojani"), was at all relevant times employed by C&S and represented by the NMDU.

10. Defendant, Richard Atkins ("Atkins"), was at all relevant times employed by C&S and represented by the NMDU.

11. Defendant, Christopher Fabiani ("Fabiani"), was at all relevant times employed by C&S and represented by the NMDU.

12. Defendant, John Cassaro ("Cassaro"), was at all relevant times employed by C&S and represented by the NMDU.

13. Defendant, Raimon Moran ("Moran"), was at all relevant times employed by C&S and represented by the NMDU.

14. Defendant, Munir Fahreddine ("Fahreddine"), was at all relevant times employed by C&S and represented by the NMDU.

15. Defendant, Willie Miles ("Miles"), was at all relevant times employed by C&S and represented by the NMDU.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter as it arises out of federal statutes, to wit, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), regarding the Plan, and the National Labor Relations Act ("NLRA") regarding the determination of seniority status.

17. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## ALLEGATIONS COMMON TO ALL COUNTS

18. C&S closed its business on January 4, 2009.

19. In anticipation of the closing, on or about November 24, 2008, the NMDU, C&S and The Times signed an agreement concerning the closure of the facilities operated by C&S ("Closure Agreement").

20. Under the Closure Agreement, C&S agreed to establish a plan to offer 140 buy-outs, each in the gross amount of $100,000, to active C&S regular situation holders in order of their seniority.

21. On or about November 24, 2008, representatives of the NMDU and The Times signed a letter agreement which confirmed their understanding that the term "seniority" as used in the Closure Agreement refers to "industry-wide priority," which was to be computed by the NMDU.

22. Seniority determined by the industry wide priority number was not necessarily the same as the seniority date for the employees of C&S.

23. In order to effectuate the Closure Agreement, C&S, as Sponsor, established the Plan.

24. Starting in Mid-November 2008, the NMDU issued various lists ranking employees at the various C&S facilities in accordance with their industry-wide priority numbers for the purpose of establishing the seniority of employees to determine, amongst other things, eligibility for the buy-out provision offered in the Plan.

25. The Plan Administrator, based on the lists issued by the NMDU, processed and paid out 134 persons under the buy-out provision of the Plan. At or about the same time, the individual defendants began to file charges with the NLRB, Region 2, alleging that the NMDU had engaged in unfair labor practices, in part, based upon the ranking of seniority for the purpose of eligibility for the buy-out provision under the Plan.

26. The charges were investigated by the Region 2 of the NLRB and a finding was made that the charges had merit.

27. In turn, the General Counsel of the NLRB filed a Complaint and subsequently an Amended Complaint against the NMDU alleging, amongst other things, a violation of Section 8(b) of the NLRA as it related to the methodology employed in determining seniority.

28. The Amended Complaint alleged that the NMDU negotiated with C&S and The Times concerning the closure of certain facilities operated by C&S and agreed to give an employment preference to certain employees based on their membership in the NMDU and/or their prior employment with an employer that has or had a collective bargaining relationship with the NMDU.

29. The Amended Complaint further alleged that The Times signed a side letter in connection with the Closure Agreement referencing "industry-wide priority." By using industry wide priority numbers, certain C&S unit employees were bestowed with employment preferences based on their prior employment with employers other than C&S or its predecessors.

30. On January 26, 2011 and April 25, 2011, the Acting Director, Region 2 of the NLRB issued an Order consolidating all the Complaints and Amended Complaints that were filed on behalf of the individual defendants.

31. Hearings were held before Administrative Law Judge ("ALJ") Raymond P. Green on September 19-22 and October 3-5, 2011.

32. ALJ Green issued his Decision on February 8, 2012 which amongst other things, directed the NMDU to revise the list used for the buy-out provision under the Plan defining seniority as the length of time an employee has worked for C&S or its immediate predecessors, and not be based on the length of time that the employee has either been a union member or the length of time the employee has worked for other the NMDU signatory employers. ALJ Green concluded as follows:

> In the event that one or more employees who bid for the buyouts should have had their bids accepted under such revised list, the Union should request the New York Times to pay each of them $100,000. In the event that this request is unsuccessful, then the Union will make these employees whole with interest.

33. The Decision of ALJ Green is not a final decision. Exceptions have been filed by all parties with the five member NLRB in Washington, D.C.

34. The ultimate placement of participants in the buy-out provision will not be known until the NLRB matter is concluded.

35. The terms of the Plan limit the number of buy-outs to 140. The Plan, having already funded 134 buy-outs, has six (6) buy-outs remaining to be funded and pursuant to this interpleader proceeding, plaintiffs want to deposit with the Court the funds necessary to cover the remaining buyouts.

36. To ensure that the proper persons are entitled to participate in the buy-out provision, the Plan Administrator and the Committee have decided to withhold payment of the remaining six (6) buy-outs pending a final determination of the NLRB.

37. Each of the individual defendants is claiming to be entitled to exercise rights under the buy-out provision of the Plan.

38. By reason of these conflicting claims of the individual defendants, the Plan Administrator and the Committee are uncertain as to which of the individual defendants, if any, is entitled to be paid pursuant to the buy-out provision.

39. Plaintiffs take no position as to which of the individual defendants, if any, is entitled to a buyout payment. Plaintiffs' only position is that the Closure Agreement and Plan provide for a total of 140 buy-outs and 134 have thus far been fully funded, leaving six (6) remaining buy-outs to be funded.

40. Plaintiffs are prepared to deposit with the Court, the sum of $368, 451.40, which is comprised of the following: (a) $100,000 for each of the remaining six (6) buy-out positions; (b) interest on the net unpaid buy-out positions to the date of the filing of this action; less (i) the value of eight week's severance required by the Plan which has already been paid to each of the individual defendants; and (ii) applicable withholding taxes required by law. To the extent that Plaintiffs have overpaid into the Court registry that which is required to satisfy the six (6) buy-

out positions, after judicial determination of all the claims, said sums should be returned to Plaintiffs at the conclusion of the action.

WHEREFORE, Plaintiffs respectfully request that the Court adjudge: (a) that the defendants be required to interplead and settle among themselves their respective claims pursuant to the Plan; (b) that the Plan Administrator and the Committee be permitted to deposit into the Registry of the Court the sum of $368,451.40 as and for all amounts that remain to be paid under the remaining six (6) buy-out positions of the Plan and upon such deposit be discharged from all liability arising under the Plan; (c) that all amounts remaining, if any, after all the claims are resolved, be returned to Plaintiffs; and (d) that Plaintiffs be awarded their costs, attorneys' fees and such other and further relief as the Court deems proper.

Dated: July 12, 2012

Respectfully submitted,

DAY PITNEY LLP
Attorneys for Plaintiffs

By: *David B. Newman* (signature)
David B. Newman (DN9577)
7 Times Square
New York, NY 10036
Tel: (212) 297-5832
Fax: (212) 881-9034