```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
THE NEW YORK TIMES COMPANY, CITY &                            :
SUBURBAN DELIVERY SYSTEMS, INC.,                              :   ORDER AND OPINION ON
CITY AND SUBURBAN DELIVERY SYSTEMS,                           :   SUBJECT MATTER
INC. JANUARY 2009 SEVERANCE PAY PLAN                          :   JURISDICTION
FOR COMPLAINT ELIGIBLE EMPLOYEES                              :
REPRESENTED BY THE NEWSPAPER AND                              :   12 Civ. 5430 (AKH)
MAIL DELIVERERS' UNION OF NEW YORK                            :
AND VICINITY, PLAN ADMINISTRATOR                              :
OF THE CITY AND SUBURBAN DELIVERY                             :
SYSTEMS, INC. JANUARY 2009 SEVERANCE                          :
PAY PLAN FOR ELIGIBLE EMPLOYEES                               :
REPRESENTED BY THE NEWSPAPER AND                              :
MAIL DELIVERERS' UNION OF NEW YORK                            :
AND VICINITY, and ERISA MANAGEMENT                            :
COMMITTEE OF THE NEW YORK TIMES                               :
COMPANY,                                                      :
                                                              :
                        Plaintiffs,                           :
                                                              :
        - against -                                           :
                                                              :
NEWSPAPER AND MAIL DELIVERERS'                                :
UNION OF NEW YORK AND VICINITY,                               :
ENRIQUE GRADOS, DJEVALIN GOJANI,                              :
CHRISTOPHER FABIANI, RICHARD ATKINS,
RAIMON MORAN, JOHN CASSARO, MUNIR
FAHREDDINE, and WILLIE MILES,

                        Defendants.
------------------------------------------------------------- X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

The National Labor Relations Board and the Newspaper and Mail Deliverers' Union argue that the Court lacks subject matter jurisdiction to hear this case. For the reasons set forth below, I hold that the Court has subject matter jurisdiction over the dispute before it.

## BACKGROUND

This interpleader action, filed July 13, 2012, has long been under my purview. Filed by The New York Times, and its wholly owned subsidiary, City and Suburban Delivery Systems ("C&S"), this action sought to resolve the claims of potentially eligible employees of benefits and buy-outs consequent to C&S closing its business on January 4, 2009. These benefits were created pursuant to an agreement signed November 24, 2008, between The Times and the Newspaper and Mail Deliverers' Union ("NMDU"), a labor organization, *see* NLRA §2(5), and were subsequently effectuated and administrated by Severance Pay Plan ("Plan"), an employee welfare benefit plan, *see* ERISA §3(1), 28 U.S.C. §1002(1).

The Plan established 140 buy-outs, each in the amount of $100,000, offered to C&S employees in the order of their seniority. *See* Plan at 4. Seniority was to be calculated according to seniority based on an "industry-wide priority." NMDU created lists ranking employees in accordance with industry-wide seniority, rather than seniority for employees of C&S. *See* Complaint ¶ 4, 5. Based on these lists, 134 of the 140 buy-outs had been processed and paid before the filing of this suit.

Soon after the agreement and the establishment of the Plan, however, at various points starting in November 2008, the individual defendants in this case filed charges with the National Labor Relations Board ("NLRB"), alleging that the NMDU had unlawfully and unfairly computed the seniority ranking. The General Counsel of NLRB subsequently filed a Complaint alleging violations of NLRA §8(b), 28 U.S.C. § 158(b), as the use of industry-wide priority numbers created a union-based preference that unfairly discriminated against non-union members. Administrative law judge Raymond Green issued a decision February 8, 2012, directing NMDU to revise its list used for the buy-out provisions. *See* Case Nos. 2-CB-21740, JD(NY)-04-12, 2012 WL 404822 (Feb. 8, 2012). ALJ Raymond's findings were affirmed by the NLRB August 21, 2014, *see* Newspaper & Mail Deliverers' Union of New York & Vicinity et

al., 361 NLRB No. 26 (Aug. 21, 2014), and upheld by the Second Circuit on March 22, 2016, *see N.L.R.B. v. Newspaper & Mail Deliverers' Union of New York & Vicinity*, 644 F. App'x 16, 17 (2d Cir. 2016), cert. denied, 137 S. Ct. 1063, 197 L. Ed. 2d 175 (2017). During the course of these proceedings, and while the appropriate "seniority" measure was litigated, the Plan Administrator withheld payment of the 6 remaining buy-outs that had not been paid before the NLRB proceedings began.

Thus, there remains only six unpaid buy-outs. The Times, along with the Plan, the Plan Administrator, and the ERISA Management Committee, filed an interpleader suit in this Court, *see* 28 U.S.C. 2361, offering to deposit the funds remaining for six buy-outs ($600,000 plus and minus adjustments, totaling $368,451.40). The $368,451.40 reflected adjustments for interest, severance paid to Defendants, and withholding taxes. The suit named as defendants the NMDU and the eight individual persons who claimed an interest in these funds, and Plaintiffs eventually deposited these funds with the Court, *see* Dkt. No. 47. This suit lingered on my calendar for five years. Other than this interpleader deposit, the Court and parties have awaited final judgment in the NLRB proceedings. The Court has one final job: ruling who may be the eligible recipients, among the eight individual defendants, of the court-deposited funds for the final 6 buy-outs.

Now, after five years, on August 17, 2017, *see* Dkt. Nos. 64, 65, the NLRB intervened to stay the Court from overseeing the distributions of these benefits, contending, among other things, that it has exclusive or primary jurisdiction. I held oral argument September 6, 2017, and denied the motion to stay.

The NLRB now argues that the Court lacks subject matter jurisdiction. The NMDU supports the NLRB's position. Plaintiffs and the individual defendants oppose. For the reasons set forth below, I find that the Court retains both statutory interpleader jurisdiction pursuant to 28 U.S.C. §1335, and federal question jurisdiction pursuant to 28 U.S.C. §1331.

3

## DISCUSSION

*Jurisdiction under §1335*

Under statutory interpleader jurisdiction, the Court has jurisdiction where: (a) a claim involves $500 or more; (b) there are two or more adverse claimants of diverse citizenship who claim to be entitled to the property at issue; and (c) the plaintiff deposits the subject property into the registry of the court. *See* 28 U.S.C. §1335(a).

Here, the claims involve more than $500, and two or more adverse claimants are of diverse citizenship. Of the 8 individual defendants, at least one is a citizen of New York and one a citizen of Connecticut. *See* Dkt. No. 92, Ex. 4, 5. "Minimal diversity" suffices for §1335 jurisdiction. *See State Farm Fire & Cas. Co v. Tashire*, 386 U.S. 523, 530, 87 S. Ct. 1199, 1203, 18 L. Ed. 2d 270 (1967). Third, the Times has deposited the subject property into the registry of the Court. I find that the Court has interpleader jurisdiction.

*Jurisdiction under §1331*

I find also that the Court has federal question jurisdiction pursuant to 28 U.S.C. §1331. Under the procedural mechanism of F.R.C.P. Rule 22, in conjunction with §1331, a party can file an interpleader action where there exists an independent basis for subject matter jurisdiction. I find that such an independent basis for subject matter exists here under ERISA §502(a), 29 U.S.C § 1132(a).

Section 502 authorizes a "participant, beneficiary, or fiduciary" to bring a civil action "to obtain [] appropriate equitable relief" to redress ERISA violations. *See* §1132(a)(3)(B). In particular, the Second Circuit has held that this provision provides jurisdiction for a court to distribute plan benefits in an interpleader action brought by plan fiduciaries. *See Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 439 (2d Cir. 2002). In the current case, plaintiffs are the grantors and fiduciaries of the Plan, and may bring an interpleader action to resolve the competing claims

4

of the plan beneficiaries. Thus, plaintiffs properly filed this interpleader suit under §1331 and FRCP Rule 22.

The Plan, furthermore, and contrary to NMDU's argument, is properly considered an employment welfare benefit plan with an "ongoing administrative program," *see Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S. Ct. 2211, 2217, 96 L. Ed. 2d 1 (1987), for the purposes of an ERISA suit, *see* ERISA §3(1). The Second Circuit considers three factors in determining whether a severance plan is an ERISA plan: (1) the employer's undertaking must have a commitment requiring managerial discretion; (2) a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; and (3) the employer was required to analyze the circumstances of each employee's termination separable in light of defined criteria. *See Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir. 1996); *Kosakow v. New Rochelle Radiology Assocs.*, P.C., 274 F.3d 706, 737 (2d Cir. 2001). All three factors are satisfied. Under the Plan, the Administrator has "absolute discretion . . . to determine the eligibility for, and the amount of, benefits due under the Plan to Participants," *see* Plan at Article VI par. 2, and the Plan provides claims procedures for aggrieved parties, which includes review of an ERISA Management Committee's determinations, *see* Article VII. I hold that the current Plan is an ERISA plan, and properly the subject of the instant ERISA action.

Finally, no other federal statute deprives this Court of jurisdiction to hear this case. While the Court lacks jurisdiction to adjudicate claims made pursuant to Sections 7 and 8 of the National Labor Relations Act, 28 U.S.C. § 157, 158, which remain under the "exclusive competence" of the NLRB, *see Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 742, 108 S. Ct. 2641, 2647, 101 L. Ed. 2d 634 (1988), the Court here is not adjudicating such claims. The NLRB, appropriately, has already adjudicated the labor-related claims, ruling on the illegality of the "seniority" measure employed by the union and the Plan. The NLRB, further, provided guidance and ordered "the Union to request that the New York Times revise the seniority of the

former C&S employees it hired so that . . . their relative seniority vis-à-vis each other reflects their unit seniority as employees of C&S and not their union seniority as employees of other union-signatory employers . . . ." 361 NLRB No. 26, 12. This leaves the Court with the remaining job of overseeing, consistent with the decision and order of the NLRB, the distribution of the six buy-outs. The distribution of those buy-outs, created pursuant to an employee welfare benefit plan, is properly within this Court's jurisdiction.

A status conference shall be held December 13, 2017, at 3:00 P.M., to discuss procedures for determining the eligible participants, according to their seniority as employees at the Time and its wholly owned subsidiary C&S, and properly distributing the deposited funds to them.

The Clerk shall terminate the NLRB's Motion to Stay Proceedings (Dkt. No. 70).

SO ORDERED.

Dated:   Dec. 5, 2017
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge